Daniel J. Pochoda (SBA No. 021979)
*dpochoda@acluaz.org*
ACLU Foundation of Arizona
77 E. Columbus St., Ste. 205
Phoenix, AZ  85012
Telephone: (602) 650-1854

Cecillia D. Wang*
*cwang@aclu.org*
Harini Raghupathi*
*hraghupathi@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
   IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Attorneys for Plaintiffs Julian Mora and Julio Mora

* Application for admission *pro hac vice* forthcoming

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JULIAN MORA and JULIO MORA,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH M. ARPAIO, Sheriff of Maricopa County, Arizona, in his individual and official capacities; CAPTAIN RAY JONES, in his individual capacity; LIEUTENANT JOE SOUSA, in his individual capacity; JOHN DOES I THROUGH IV, in their individual capacities; and MARICOPA COUNTY, ARIZONA, a body politic,<br><br>Defendants. | No. _____<br><br>COMPLAINT FOR DAMAGES<br><br>(Violation of Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983; Violation of Arizona State Constitution, art. 2, §§ 8 and 13; False Arrest/False Imprisonment; Assault; Battery; and Intentional Infliction of Emotional Distress) |

## INTRODUCTION

1. On the morning of February 11, 2009, Julian Mora was driving to his place of work in southern Phoenix, accompanied by his teenaged son, Julio Mora. Julian Mora was taking his usual route and obeying all laws when a Maricopa County Sheriff's Office ("MCSO") vehicle suddenly cut in front of him, forcing him to stop abruptly. Without any legal justification, MCSO deputies ordered Julian and Julio Mora out of their pickup truck, frisked them, and handcuffed them. The deputies then transported the Moras to Julian Mora's workplace where MCSO was in the process of conducting an immigration-related raid. Over the course of the next three hours, MCSO deputies detained the Moras, forbade them from any contact with the outside world, and subjected them to painful and humiliating mistreatment resulting in emotional distress and injury. The Moras were effectively taken prisoner by armed MCSO personnel without any explanation for their arrest.

2. The MCSO officers who planned the raid and those who arrested, detained and mistreated Julian and Julio Mora acted pursuant to the policies of and training by Defendants Arpaio and Maricopa County. Specifically, Defendants Arpaio and Maricopa County, through their policies and training programs, and as implemented by the individual Defendants through their actions, subjected the Moras to an unreasonable seizure and to prolonged and unjustified detention. Defendants further singled out the Moras from others traveling on the roadway based on their race, ethnicity and/or perceived national origin. As a result of these policies and failures to properly train, the Moras experienced harms and suffered violations of their fundamental constitutional rights and rights under state law.

3. By this Complaint, Plaintiffs, through their counsel, seek compensation for the harms resulting from Defendants' abusive and illegal actions. Plaintiffs also seek punitive damages to deter Defendants from maintaining their illegal policies, practices and customs and from repeating such unlawful conduct.

## JURISDICTION AND VENUE

4. This action arises under 42 U.S.C. § 1983, the laws and Constitution of the United States, and the laws and Constitution of the State of Arizona. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and directly under the United States Constitution. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

5. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. As to the state law claims set forth herein, a notice of claim pursuant to A.R.S. § 12-821.01 was timely served on Defendants and was deemed denied by operation of statute.

## PARTIES

### Plaintiffs

7. Julian Mora ("Mr. Mora") is a resident of Avondale, Arizona. He has been a legal permanent resident of the United States for over thirty years, and has resided in Arizona since 1977. On the date of the events at issue in this Complaint, Mr. Mora was an employee at Handyman Maintenance Inc. ("H.M.I.") contracting in Phoenix. Mr. Mora is 66 years old. He is and appears to be Latino.

8. Julio Mora ("Julio"), Mr. Mora's son, is a resident of Avondale, Arizona. He is a U.S. citizen, who was born and raised in Arizona. Julio Mora is 19 years old. He is and appears to be Latino.

### Defendants

9. Defendant Joseph M. Arpaio ("Arpaio") is the duly elected Sheriff of Maricopa County, Arizona. He is an officer of Maricopa County and has responsibility over the policies, practices, customs, and training of MCSO personnel and volunteer posse acting pursuant to A.R.S. § 11-441(D). Defendant Arpaio is the final decision maker for Maricopa County on matters of law enforcement. He is sued in his individual and official capacities.

10. Defendant Ray Jones is a Captain with the MCSO and the Commander of the Enforcement Support Division. He had supervisory authority over the planning, practices and personnel for the raid on Mr. Mora's workplace on February 11, 2009, including the operational plan for the raid, the extension of that raid to the unjustified stop of the Plaintiffs away from the workplace, their arrest and transport to the workplace, and their prolonged detention for interrogation as part of the raid. Defendant Jones is an employee of Maricopa County and is sued in his individual capacity.

11. Defendant Joe Sousa is a Lieutenant with the MCSO and the head of the Human Smuggling Unit within the Enforcement Support Division. He had supervisory authority over the planning, practices and personnel for the raid on Mr. Mora's workplace on February 11, 2009, including the operational plan for the raid, the extension of that raid to the unjustified stop of the Plaintiffs away from the workplace, their arrest and transport to the workplace, and their prolonged detention for interrogation as part of the raid. Defendant Sousa is an employee of Maricopa County. He is sued in his individual capacity.

12. Defendant John Doe I is a deputy or posse member with the MCSO. John Doe I was on duty near H.M.I. on the morning of February 11, 2009, and participated in the vehicle stop, detention, frisking, and cuffing of Plaintiffs on that date. He is an employee or served under the direction and control of Maricopa County and Defendant Arpaio and is sued in his individual capacity.

13. Defendant John Doe II is a deputy or posse member with the MCSO. John Doe II was on duty near H.M.I. on the morning of February 11, 2009, and participated in the vehicle stop, detention, frisking, and cuffing of Plaintiffs on that date. He is an employee or served under the direction and control of Maricopa County and Defendant Arpaio and is sued in his individual capacity.

14. Defendant John Doe III is a deputy or posse member with the MCSO. John Doe III was on duty at H.M.I. on the morning of February 11, 2009 and participated in denying Plaintiffs access to the bathroom and making statements to Plaintiff Julio Mora

1  of a humiliating nature.  He is an employee or served at the direction of Maricopa County
2  and Defendant Arpaio and is sued in his individual capacity.

3      15.    Defendant John Doe IV is a deputy or posse member with the MCSO. John
4  Doe IV was on duty at H.M.I. on the morning of February 11, 2009 and participated in
5  the detention of Plaintiff Julio Mora and in questioning Mr. Mora.  He is an employee or
6  served at the direction of Maricopa County and Defendant Arpaio and is sued in his
7  individual capacity.

8      16.    All of the individual defendants acted under color of law during the events
9  described below.

10      17.    Defendant Maricopa County, Arizona, is a political subdivision formed and
11  designated as such pursuant to Title 11 of the Arizona Revised Statutes.  Maricopa
12  County is liable for the practices and policies of Defendant Arpaio, the final decision
13  maker for law enforcement operations in the County, including raids on businesses.  The
14  County is also liable for Defendant Arpaio's failure to adequately train MCSO deputies
15  and posse members on the constitutional limitations of their powers to stop, arrest, detain,
16  and question members of the public or the need to avoid unnecessary humiliation or harm
17  to those persons. Maricopa County is responsible for all actions of the officers, agents,
18  and employees of Maricopa County, including each of Defendants Arpaio, Jones, Sousa
19  and John Does I-IV.

20  **FACTUAL ALLEGATIONS**

21      18.    On February 11, 2009, MCSO conducted a workplace raid at H.M.I.,
22  located at 2646 S. 19th Avenue in Phoenix. Upon information and belief, this raid was
23  conducted at the direction of Defendants Arpaio, Jones and Sousa.

24      19.    In the early morning of the same date, Mr. Mora was driving his pickup
25  truck to work at H.M.I.  Julio was a passenger in the vehicle. Julio was not an employee
26  of H.M.I.

27      20.    Mr. Mora took the Durango Street exit from Interstate 17 and proceeded
28  onto Hilton Avenue.  As he approached the stop sign at the intersection of Hilton Avenue

- 4 -

and 19th Avenue, Mr. Mora and his son saw two MCSO sport utility vehicles parked on Hilton Avenue.  Upon information and belief, the MCSO personnel inside those vehicles could observe Mr. Mora and his son, including the color of their skin and other physical characteristics, and the Mexican *tejana* hat that Mr. Mora was wearing on his head.  After coming to a complete stop, Mr. Mora made a right turn onto 19th Avenue, heading southbound. One of the MCSO vehicles suddenly pulled up behind Mr. Mora, while the other pulled up from the side and stopped directly in front of his truck.  Mr. Mora was surprised by this unexpected action and had to step hard on his brake to avoid hitting the first MCSO vehicle.   This stop took place approximately one hundred (100) yards from the entrance of H.M.I. in front of an adjacent business known as W.W. Williams.

21. There was no reasonable suspicion of any criminal activity or of any traffic violation to justify this stop. Upon information and belief, Defendants involved in this stop observed that Plaintiffs were Latino and based their decision to stop the vehicle in part on this observation.  At the time of the stop, there were numerous other vehicles on 19th Avenue, but Plaintiffs did not observe MCSO deputies stop any Caucasian drivers, passengers or pedestrians.  Upon information and belief, MCSO deputies did not stop any Caucasian drivers, passengers or pedestrians during the course of the raid on H.M.I.

22. Following the stop, Defendant John Doe I approached the driver's side window and asked where the Plaintiffs were going.  Plaintiffs explained that Mr. Mora was going to work at H.M.I.  Upon John Doe I's demand, Mr. Mora produced a valid Arizona driver's license.  John Doe I then ordered Plaintiffs out of the vehicle.

23. Defendant John Doe II came out of the MCSO vehicle that was behind Mr. Mora's truck and helped John Doe I frisk Plaintiffs.

24. John Does I and II restrained the Plaintiffs by using hard plastic "zip-tie" handcuffs to bind their wrists.  Plaintiff Julio Mora's hands were tied too tight, causing him pain and leaving marks on his arms.

25. MCSO deputies did not have reasonable suspicion or probable cause to

believe that Plaintiffs had violated any laws, and the stop, frisk, arrest and subsequent detention and interrogation were unjustified and unconstitutional.

26. The above stop, frisk, and arrest created great anxiety and fear for Plaintiffs. They saw that they were being treated like criminals but could not understand why they were subjected to such treatment.  Plaintiff Julio Mora asked John Does I and II why he and his father were being arrested, but Plaintiffs were not given any answers.

27. Still cuffed, Plaintiffs were involuntarily transported to H.M.I. by John Does I and II.  The worksite includes an office structure, an uncovered area adjacent to the office, and a back lot where company vehicles were parked.  The entire premises are enclosed by a chain link fence.  Plaintiffs were brought to the uncovered area.

28. Upon arrival at H.M.I., Plaintiffs observed a scene that resembled a heavily guarded armed camp, with nearly as many uniformed MCSO personnel as detainees.  It appeared that all of the employees who showed up to work at H.M.I. that morning were being detained.  Some of the MCSO deputies were wearing masks over their faces and carrying semiautomatic rifles. Others surrounded H.M.I. employees who had been herded into two long lines for interrogation. Detainees were not provided with any food or water at any point while detained.  They were ordered not to use their cell phones to speak with anyone on the outside, nor were they permitted to talk with other employees.

29. Plaintiffs were frightened and intimidated by this situation. They were not free to leave.  They felt humiliated as other detainees and MCSO personnel observed them being escorted in handcuffs to one of the two long lines to wait with the other detainees.

30. Plaintiff Julian Mora had needed to use the bathroom since leaving his house. Once transported to H.M.I., both Plaintiffs made repeated requests for Mr. Mora to use the bathroom, but Defendant John Doe III and other MCSO personnel told them he did not have permission to do so. Mr. Mora is diabetic and has difficulty controlling his bladder. When he cannot use the bathroom, his condition causes him substantial pain and distress. Plaintiffs told Defendant John Doe III and other MCSO personnel that Mr. Mora

had a particular need to use the bathroom because he was sick, but deputies continued to prohibit him from using the bathroom.

31. At one point, an employee standing behind Plaintiff Julio Mora said something about Mr. Mora not being permitted to use the bathroom. Upon information and belief, MCSO personnel thought it was Julio speaking and moved him to the back of the line, away from his father.

32. Finally, Mr. Mora told the deputies he would have to urinate right in front of everyone. This was extremely embarrassing for Mr. Mora, especially as there were female co-workers present. A deputy then escorted Mr. Mora to the parking lot where he was made to urinate outside behind a car.

33. Plaintiff Julio Mora also had to use the bathroom. Julio was later taken by MCSO personnel to a bathroom within the H.M.I. facility. As he approached, Julio observed John Doe III in the vicinity of the bathroom. He asked to have his hands un-cuffed, but John Doe III refused. When Julio had trouble going to the bathroom with his hands together and asked John Doe III for help, John Doe III mocked Julio, shouting "What's the matter, you can't find it?"

34. After he returned from the bathroom, Plaintiff Julio Mora informed John Doe IV that he was not an H.M.I. employee and asked whether he could leave. John Doe IV told him that he would have to wait until he got to the front of the line.

35. By the time Julio reached the front of the line, he had been detained for nearly three hours. Deputy John Doe IV questioned him about his identity and immigration status even though he was already on notice that Julio did not work at H.M.I. and had no reason to believe that Julio was an H.M.I. employee. Plaintiff Julian Mora was questioned shortly before, also about his identity and immigration status. MCSO deputies had no probable cause or even reasonable suspicion to believe that either Plaintiff had violated any law or was unlawfully present in the United States.

36. At no point did any MCSO deputy inform the Plaintiffs of their rights or give any reason for Plaintiffs' arrest and detention. For almost three hours, Plaintiffs were

prisoners of MCSO, with every movement controlled by MCSO personnel. Plaintiffs were not permitted to contact family members or loved ones to explain where they were or speak with a lawyer to get advice. During this entire period, MCSO personnel gave no explanation for their conduct. Plaintiffs were permitted to leave only after getting to the front of the line and answering questions about their immigration status.

37. Plaintiffs were deeply frightened, bewildered and upset by their unexplained arrest and involuntary transport to H.M.I., their three-hour detention and the mistreatment and abuse they suffered at the hands of MCSO personnel. Plaintiffs had never before seen anything like the raid that took place at H.M.I, nor had they ever been subjected to such treatment. They could see no reason for the actions and experienced a great deal of anxiety about what the deputies or posse would do, whether the humiliation and suffering would end, and what the outcome would be.

38. The actions by Defendants as described above, including the unlawful stop, frisk, arrest, use of wrist restraints, involuntary transport to H.M.I., detention at H.M.I., refusal to explain, refusal to permit phone calls, refusal to allow timely use of a bathroom, failure to provide advisal of rights, and custodial interrogation of Plaintiffs Julian and Julio Mora, were all the direct result of the policies and practices of, and training provided by, Defendants Arpaio and Maricopa County for immigration-related raids and vehicle stops.

39. MCSO's raid on H.M.I. and the harms suffered by the Moras are part of a clear pattern and practice of high-profile immigration-related workplace raids that have been conducted by Defendant Arpaio since 2008. Upon information and belief, during these raids, it has been common practice for MCSO deputies to initially detain all of the workers on site regardless of whether there is any individualized reasonable suspicion or probable cause to believe that particular workers have violated any laws. *See*, *e.g.*, Megan Boehnke & JJ Hensley, "Sheriff's Office Raids Gold Canyon Candle Company," Ariz. Rep. (Sept. 10, 2008) ("Deputies held 300 employees for about six hours . . . refusing to let anyone in or out," yielding "65 arrests"); Jackee Coe & JJ Hensley,

"Sheriff's Deputies Raid Mesa Landscaping Business," Ariz. Rep. (Aug. 27, 2008) (reporting that "workers [including U.S. citizens] were handcuffed with plastic zip-ties" until deputies could "check[] for [immigration] documents.").

40. In addition, the policies, practices and training of Defendant Arpaio, the operational plan for the raid on H.M.I., and instructions by Defendants Jones and Sousa as supervisors during the raid allowed for vehicle stops to be conducted away from the workplace without individualized reasonable suspicion or probable cause of wrongdoing, the unwarranted use of restraints, the denial of food and water, the prohibition on use of cell phones, and unreasonable and humiliating restrictions on the use of bathrooms by workers.

41. Defendant Arpaio's policies, practices and training, and the operational plan for the raid, failed to require officers to advise detainees of their constitutional rights or provide legally-mandated accommodations for the sick or elderly. Defendants Jones and Sousa failed to address those omissions in their instructions as supervisors during the raid on H.M.I.

42. The illegal and abusive actions taken against Plaintiffs and the resulting harms were the predictable and intended result of Defendant Arpaio's policies, practices, and training, the operational plan, and supervisors' instructions. In addition, the individual Defendants knew or should have known that their actions would result in foreseeable harm and loss of rights to any person subjected to them, including Plaintiffs.

43. Defendants Jones, Sousa, Arpaio, and Maricopa County failed to monitor the illegal actions of MCSO deputies and posse members at H.M.I. after they occurred, and upon information and belief, not one of the individual Defendants was disciplined or reprimanded for conduct during the raid on H.M.I.

44. Defendants violated Plaintiffs' clearly established constitutional rights to be free from unreasonable searches and seizures and unlawful discrimination on the basis of race, ethnicity and/or national origin.

45. Defendant Arpaio and the individual Defendants' actions demonstrated a reckless disregard for the well-being and basic rights of Plaintiffs, and an intent to humiliate Plaintiffs. This intent was made evident by their actions before, during and after the raid, including, but not limited to, the unnecessary and insulting denial of reasonable use of the bathroom.

46. Upon information and belief, Defendant Arpaio and the other Defendants acted in the same manner in past workplace raids and will continue to act in the same manner in future operations absent legal deterrents. In response to recent speculation about the future of his neighborhood sweeps, workplace raids and other immigration-enforcement efforts, Defendant Arpaio stated "I know one decision: I'm not stopping. . . . Nothing is going to change." J.J. Hensley, "Arpaio Has Less than 90 Days to Weigh Immigration Strategies," *Arizona Republic*, Aug. 5, 2009. Exemplary damages are required as punishment and to deter Defendants from repeating these abusive and illegal actions in the future.

47. As a direct and proximate result of the breach of Plaintiffs' rights in each of the eight claims below for relief, Plaintiffs sustained, and continue to sustain, substantial injuries, including loss of enjoyment of life, stress, fear, humiliation and psychological harm. Plaintiffs are entitled to compensation for the harms resulting from the unconstitutional and illegal actions by Defendants.

## CLAIMS FOR RELIEF

### First Claim For Relief

Violation of the Fourth Amendment to the United States Constitution

42 U.S.C. §1983

(Against All Defendants)

48. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

49. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons…against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

50. By their actions described above, including stopping, frisking, cuffing and arresting Plaintiffs and bringing them to H.M.I., and, prohibiting the Moras from leaving H.M.I. until they answered questions about their identity and immigration status, without probable cause to believe or even reasonable suspicion that Plaintiffs had violated any law, or directing the above, Defendants violated Plaintiffs' right against unreasonable searches and seizure, as guaranteed by the Fourth Amendment to the Constitution of the United States and incorporated against the States through the Fourteenth Amendment.

**Second Claim For Relief**

Violation of the Fourteenth Amendment to the United States Constitution

42 U.S.C. § 1983

(Against Defendants Arpaio, Maricopa County, Jones, Sousa,

and John Does I and II)

51. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

52. The Fourteenth Amendment to the United States Constitution provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of its laws."

53. As Latino persons, Plaintiffs are members of a protected class. By their actions described above, including stopping and selecting the Moras for investigation, at least in part, on the basis of their ethnicity, race and/or national origin, and not subjecting Caucasian motorists on the road that morning to the same treatment, Defendants engaged in profiling and discrimination against Plaintiffs and deprived Plaintiffs of equal protection of the laws, as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

**Third Claim For Relief**

Violation of Article 2, Section 8 of the Arizona Constitution

(Against All Defendants)

54. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

55. Article 2, Section 8 of the Arizona Constitution provides: "No person shall be disturbed in private affairs…without authority of law."

56. By their actions described above, including stopping, frisking, and arresting the Moras, bringing them to H.M.I., not removing their handcuffs, prohibiting the Moras from leaving H.M.I. until they answered questions about their identity and immigration status without any probable cause to believe or even reasonable suspicion that they had violated any law, or authorizing or acquiescing in the actions of other Defendants under their direction, Defendants violated the Moras' freedom from unreasonable searches and seizures, as protected by Article 2, Section 8 of the Arizona State Constitution.

**Fourth Claim For Relief**

Violation of Article 2, Section 13 of the Arizona Constitution

(Against Defendants Arpaio, Maricopa County, Jones, Sousa, and John Does I and II)

57. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

58. Article 2, Section 13 of the Arizona Constitution provides: "No law shall be enacted granting to any citizen…privileges and immunities which, upon the same terms, shall not equally belong to all citizens...."

59. By their actions described above, including stopping and selecting the Moras for investigation, at least in part, on the basis of their race and/or ethnicity, or authorizing or acquiescing in the actions of other Defendants under their direction, the Defendants denied the Moras equal privileges and immunities, as guaranteed by Article 2, Section 13 of the Arizona State Constitution.

**Fifth Claim For Relief**

False Arrest/False Imprisonment

(Against Arpaio, Maricopa County, and John Does I-IV)

60. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

61. By their actions described above, including stopping, frisking, and arresting the Moras, bringing them to H.M.I., not removing their handcuffs, prohibiting the Moras from leaving H.M.I. until they answered questions about their identity and immigration status without any probable cause to believe or even reasonable suspicion that Plaintiffs had violated any law, Defendants John Does I-IV restrained Plaintiffs' liberty without lawful justification and did so intentionally without Plaintiffs' consent. Defendants Arpaio and Maricopa County are liable for authorizing or acquiescing in the actions of, and/or employing John Does I-IV.

**Sixth Claim For Relief**

Assault

(Against Arpaio, Maricopa County, and John Does I and II)

62. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

63. By their actions described above, including stopping, frisking, and arresting the Moras, Defendants John Does I and II intended to cause offensive or harmful contact and imminent apprehension of contact with the Plaintiffs, and in fact caused Plantiffs to apprehend imminent contact. Defendants Arpaio and Maricopa County are liable for authorizing or acquiescing in the actions of, and/or employing John Does I and II.

**Seventh Claim For Relief**

Battery

(Against Arpaio, Maricopa County, and John Does I and II)

64. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

65. By their actions described above, including stopping, frisking, and arresting the Moras, and tying their hands tight enough to leave marks on Julio Mora's arms, Defendants John Does I and II intended to cause harmful contact, and in fact caused harmful contact, with the Plaintiffs. Defendants Arpaio and Maricopa County are liable for authorizing or acquiescing in the actions of, and/or employing John Does I and II.

### Eighth Claim For Relief

Intentional Infliction of Emotional Distress

(Against Arpaio, Maricopa County, and John Doe III)

66. The above paragraphs are hereby incorporated by this reference as though fully set forth here.

67. By the actions described above, including, but not limited to, refusing to allow Julian Mora access to a bathroom despite his repeated requests and his statement that Defendants' actions were causing him physical pain due to his medical condition, and mocking Plaintiff Julio Mora when he had difficulty going to the bathroom with his hands still tied together, John Doe III engaged in extreme and outrageous conduct for a law enforcement officer, and acted intentionally to cause severe emotional distress to Julio Mora. Defendants Arpaio and Maricopa County are liable for authorizing or acquiescing in the actions of, and/or employing John Doe III.

### PRAYER FOR RELIEF

68. Plaintiffs Julian and Julio Mora therefore respectfully request that the Court enter a judgment, including but not limited to:

    a. Declaratory relief;

    b. Compensatory damages in an amount to be proven at trial;

    c. Punitive damages in an amount to be proven at trial;

    d. Nominal damages;

    e. Costs and reasonable attorneys' fees; and

f.  Such additional and further relief as the Court deems just and equitable.

DATED this 19th day of August, 2009.

By  /s/ Daniel J. Pochoda
Daniel J. Pochoda
ACLU Foundation of Arizona
77 E. Columbus St., Ste. 205
Phoenix, AZ 85012

Cecillia D. Wang
Harini Raghupathi
American Civil Liberties Union Foundation
  Immigrant's Rights Project
39 Drumm St.
San Francisco, CA  94111

Attorneys for Plaintiffs Julian Mora and Julio Mora