**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julian Mora; and Julio Mora, | No. CV-09-1719-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, Sheriff of Maricopa County, Arizona, in his individual and official capacities; Captain Ray Jones; Lieutenant Joe Sousa; Sergeant George Acritelli; Sergeant Guadalupe Rios; Officer Guillermo Montano; and John Does I through III, in their individual capacities; and Maricopa County, Arizona, a body politic, | |
| Defendants. | |

This case arises from a workplace immigration raid conducted by the Maricopa County Sheriff's Office ("MCSO"). Julian Mora has been a lawful permanent resident of the United States for more than 30 years, and his son, Julio Mora, is a United States citizen. Julian was an employee of Handyman Maintenance Inc. ("HMI"), a landscaping business located in South Phoenix. On the morning of February 11, 2009, Julian drove his pickup truck to work. He was accompanied by Julio, who intended to seek a job at HMI. As they neared the HMI worksite, the Moras were stopped by two MCSO deputies. The deputies ordered the Moras out of the truck, handcuffed them, and transported them to the HMI worksite where a large-scale immigration raid by MCSO was underway. The Moras were made to stand in line with other HMI employees for

nearly three hours, were questioned about their identities and immigration status once they reached the front of the line, and were released only after it was determined that they had committed no identity theft or forgery offense and were lawfully present in the United States.

The Moras filed suit in August 2009. Doc. 1. The action is brought against Maricopa County, Sheriff Joseph Arpaio, the two unknown John Doe Deputies who initially stopped Plaintiffs, a John Doe Officer who participated in the detention and questioning of Julio Mora at HMI, and certain identified MCSO personnel involved in the operation: Captain Ray Jones, Lieutenant Joe Sousa, Sergeants George Acritelli and Guadalupe Rios, and Officer Guillermo Montano. The second amended complaint asserts federal civil rights claims under 42 U.S.C. § 1983, violations of the Arizona Constitution, and various tort claims. Doc. 59. Specifically, the complaint asserts eight claims: violations of the Fourth Amendment and Article 2, Section 8 of the Arizona Constitution against all Defendants (counts one and three), violations of the Fourteenth Amendment and Article 2, Section 13 of the Arizona Constitution against all Defendants except Officer Montano (counts two and four), false arrest and imprisonment against the County, the Sheriff, the John Doe Deputies, and Officer Montano (count five), assault and battery against the County, the Sheriff, and the John Doe Deputies (counts six and seven), and intentional infliction of emotional distress against the County, the Sheriff, and Officer Montano (count eight). *Id.*

The parties have filed motions for partial summary judgment. Docs. 144, 147. The motions are fully briefed. Docs. 155, 160, 161, 163, 170. For reasons stated below, the motions will be granted in part and denied in part.[1]

**I.   Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

- 2 -

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Plaintiffs' Motion.

Plaintiffs seek summary judgment as to the County's liability on the claim under § 1983 for alleged violations of the Fourth Amendment (count one), and the state law claims for violation Article 2, Section 8 of the Arizona Constitution, false arrest and imprisonment, assault, and battery (counts three, five, six, and seven). Plaintiffs' motion will be granted with respect to part of count one.

### A. Count One.

In the § 1983 claim asserted in count one, Plaintiffs seek to hold the County liable for deprivations of their constitutional rights under the theory of municipal liability set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Doc. 147 at 8. Under *Monell*, municipal liability can result from the policy, practice, or custom of the County itself or its final policymaker. 436 U.S. at 694. There must be an underlying constitutional violation in order for the County to be found liable under § 1983, *see Simmons v. Navajo County*, 609 F.3d 1011, 1021 (9th Cir. 2010), but the violation need not be ascribed to a specific County official. *See Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1186 n.7 (9th Cir. 2002); *Menotti v. City of Seattle*, 409 F.3d 1113, 1151 (9th Cir. 2005).

Plaintiffs argue that MCSO officers violated their Fourth Amendment right to be

free from unreasonable search and seizure in three ways: the initial stop of their vehicle, their subsequent arrests, and their continued detention at HMI. Doc. 147 at 12-21. Plaintiffs further argue that the County is liable for those constitutional violations because they occurred as a result of the policies, practices, and customs promulgated and ratified by Sheriff Arpaio, the County's final policymaker for law enforcement matters. *Id.* at 21-25. The Court will address the claimed constitutional violations separately before turning to the issue of the County's liability under § 1983.

### 1. The Stop.

"'The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights.'" *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citation omitted). To establish a claim under § 1983, the plaintiff must show the deprivation of a right secured by the federal Constitution or statutory law and that this deprivation was committed by a person acting under color of state law. *See id.* In this case, there is no dispute that Defendants acted under color of state law for purposes of § 1983. *See id.* (county commander acted under color of state law by invoking his law enforcement status); *Flanders v. Maricopa County*, 54 P.3d 837 (Ariz. Ct. App. 2002) (affirming judgment on § 1983 claims against Maricopa County and Sheriff Arpaio).

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures" by the government, and "'its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). For a law enforcement officer "'to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity.'" *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) (citations omitted). While the level of suspicion required for a traffic stop is less demanding than that for probable cause, it is "more than an 'inchoate and

unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Reasonable suspicion to make a traffic stop exists only where the officer has "'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Liberal*, 632 F.3d at 1077 (citation omitted).

Plaintiffs have presented undisputed evidence showing the following.[2] HMI is located on the northwest corner of 19th Avenue and Lower Buckeye Road, with Hilton Avenue to the north. Doc. 148 ¶ 3. On the morning in question, shortly before 6:00 a.m., Julian drove his Ford pickup truck east on Hilton Avenue and turned right, heading south on 19th Avenue. *Id.* ¶ 5. There was normal traffic flow on 19th Avenue, and Julian had no problem turning onto the street from Hilton Avenue. *Id.* ¶ 7. When Plaintiffs were about 100 meters north of HMI, they were suddenly stopped by the John Doe Deputies – one of the officers' vehicles cutting in front of Plaintiffs' truck and the other blocking the truck from behind. *Id.* ¶ 5. Julian had committed no traffic violation, and neither Plaintiff was ever charged with a crime. *Id.* ¶ 6. Nor, prior to the operation at HMI, had MCSO identified Julian's truck as belonging to or associated with any suspect. *Id.* ¶ 48. In short, the undisputed evidence shows that when the John Doe Deputies stopped Plaintiffs, they had no suspicion, reasonable or otherwise, that Plaintiffs were in violation of the traffic laws or engaged in criminal activity.

The County asserts that Plaintiffs were stopped "inside the perimeter of operations" set up by MCSO (Docs. 161 at 4, 162 ¶ 9), but the cited evidence fails to support this assertion. Lieutenant Souza testified only that he saw a truck being pulled

---

[2] Defendants have failed to comply with Local Rule of Civil Procedure 56.1(b), that is, they have filed no separate statement setting forth, for each paragraph of Plaintiffs' statement of facts (Doc. 148), a correspondingly numbered paragraph indicating whether Defendants dispute the facts presented by Plaintiffs. Those facts are therefore deemed admitted for purposes of Plaintiffs' summary judgment motion. LRCiv 56.1(b); *see Kunz v. Smith's Food & Drug Ctrs., Inc.*, No. CV-09-1645-PHX-GMS, 2011 WL 995895, at *1 n.1 (D. Ariz. Mar. 21, 2011); *see also* Fed. R. Civ. P. 56(e)(2).

over some 25-50 yards from the HMI worksite. Doc. 162-2 at 14-15. He did not testify that the truck belonged to Plaintiffs, and even his distance estimate was a "total guess" given that it was still dark out when he saw the vehicle being pulled over. *Id.* at 14.

The County notes that MCSO posse member Fred Dawert recalls a son asking if he could take his father to work at HMI, and then obtaining permission to allow a truck driven by the father to pass through the security perimeter and travel down 19th Avenue toward HMI. Doc. 162 ¶¶ 6-7. But the County presents no evidence from which a jury reasonably could conclude that Plaintiffs were the persons Dawert encountered.

To survive summary judgment, the County "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The County must set out "'specific facts showing that there is a *genuine* issue for trial.'" *Anderson*, 477 U.S. at 248 (citation omitted; emphasis added). Mere speculation that Plaintiffs may have been inside a security perimeter does not suffice. *See id.* at 252 (the "existence of a scintilla of evidence" is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]").

The MCSO Defendants assert that because Plaintiffs were stopped close to the HMI property, Plaintiffs were in the "thick of it" and the John Doe Deputies "reasonably desired to obtain safety and control via a detention." Doc. 163 at 12. This is nothing more than speculation unsupported by fact. The MCSO Defendants admit that they have no idea what facts were known by Deputies when they stopped Plaintiffs. *Id.* at 11. Given the absence of evidence showing Plaintiffs were inside a security perimeter, the expert testimony on this issue (*see id.* at 7-8) is not material and is insufficient to create a triable issue.

"The Fourth Amendment requires 'some minimal level of objective justification' for making [a traffic] stop." *Sokolow*, 490 U.S. at 7 (citation omitted). No such justification may be inferred from the summary judgment evidence. The Court therefore

finds that the stop of Plaintiffs violated their Fourth Amendment right to be free from unreasonable seizure. *See Liberal*, 632 F.3d at 1078 (officer who stopped the plaintiff was not entitled to qualified immunity on a Fourth Amendment claim where the plaintiff had violated no traffic law and there was no reason to suspect he was engaged in criminal activity); *see also* Fed. R. Civ. P. 56(g) (on summary judgment "the court may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case").

### 2. The Arrests.

"An arrest – or, to use the Fourth Amendment's terminology, a 'seizure' – ' occurs when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restricts the liberty of a person.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (citations omitted). A person's liberty is restrained where, considering the totality of the circumstances surrounding the encounter, "'the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (citations omitted).

The undisputed facts show that the John Doe Deputies stopped Plaintiffs in an aggressive manner, suddenly turning in front of their truck as it traveled down 19th Avenue and blocking the rear of the vehicle to prevent escape. Doc. 148 ¶ 5. The Deputies then approached the truck and asked Plaintiffs where they were headed. When Plaintiffs' responded that they were to going to HMI, the Deputies ordered them out of the truck, handcuffed them with hard plastic "zip-ties," and took them to the HMI yard where they were detained for nearly three hours. *Id.* ¶¶ 9-11.

The County has presented no evidence that Plaintiffs were a flight risk, were armed or otherwise dangerous, or refused to comply with the command to exit their vehicle. Under these circumstances, it is clear that the Deputies, through a show of authority and the use of physical force, restricted Plaintiffs' liberty and arrested them. Stated differently, the Deputies' conduct clearly would have communicated to a

reasonable person that he was not at liberty to ignore the Deputies and "go about his business." *Hopkins*, 573 F.3d at 773; *see United States v. Del Vizo*, 918 F.2d 821, 824-25 (9th Cir. 1990) (ordering suspect to "alight from his vehicle" was a factor demonstrating an arrest); *United States v. Bravo*, 295 F.3d 1002, 1010 (9th Cir. 2002) ("handcuffing is a substantial factor in determining whether an individual has been arrested"); *United States v. Washington*, 490 F.3d 765, 772 (9th Cir. 2009) (considering fact that the officer directed the suspect where to walk in holding that an arrest occurred); *United States v. Ricardo D.*, 912 F.2d 337, 340-42 (9th Cir. 1990) (arrest occurred where police held the suspect in a patrol car for twenty minutes); *Dunaway v. New York*, 442 U.S. 200, 207 (1979) ("There can be little doubt that petitioner was 'seized' in the Fourth Amendment sense when he was taken involuntarily to the police station.").

Under the Fourth Amendment, a warrantless arrest is constitutional only if it is based on probable cause. *See United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111-14 (1975)). Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Gerstein*, 420 U.S. at 111-12 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Where there is no factual dispute, probable cause is a question of law for the court. *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003).

There was probable cause to arrest Plaintiffs, the County asserts, because Julian Mora told the John Doe Deputies that he was an HMI employee, Julio Mora had no identification on his person, and the warrant to search the HMI premises (discussed more fully below) included a suspect named "Julio Mendoza Mora." Docs. 161 at 8, 162 ¶¶ 11-12. But the County presents no evidence that, at the time of arrest, the John Doe Deputies had a copy of the search warrant or otherwise had knowledge of the suspects identified in the warrant. Nor does the evidence show that the Deputies ever asked Julio for his name. *See* Doc. 148 ¶¶ 9-12.

At bottom, the only fact supporting Plaintiffs' arrest is the statement by Julian that he was an HMI employee. The County does not assert, and the Court does not otherwise find, that this fact was sufficient "'to warrant a prudent man in believing that [Plaintiffs] had committed or [were] committing an offense.'" *Gerstein*, 420 U.S. at 111-12. Any mistakes on the part of the John Doe Deputies, even if made in good faith, were not "'those of reasonable men, acting on facts leading sensibly to their conclusions of probability.'" *Id.* at 112 (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)); *see Henry v. United States*, 361 U.S. 98, 102 (1959) (good faith on the part of arresting officers is no substitute for probable cause). The Court finds that the warrantless arrest of Plaintiffs was made without probable cause and, therefore, in violation of the Fourth Amendment. *See Ramirez*, 560 F.3d at 1024 (it is "clearly established that every arrest 'is unreasonable unless it is supported by probable cause'") (citation omitted); *Ganwich v. Knapp*, 319 F.3d 1115, 1119-20 (9th Cir. 2003) (making an arrest without probable cause is "per se unreasonable").[3]

### 3. The Detention.

Two days before the operation, MCSO obtained a warrant to search HMI's premises for evidence of identity theft and forgery offenses. Doc. 162-2 at 20-36. The scope of the warrant included employee records and other information that would "aide with the identification of the person unlawfully using [a] name and/or social security number[.]" *Id.* at 23. The warrant also identified by name 67 persons who may have been concealing such information. *Id.* at 20-23.

Plaintiffs contend that the duration and intrusive nature of their detention at HMI rendered it an unreasonable "general search" in violation of the Fourth Amendment. Doc. 147 at 14-21. The Supreme Court's precedents, and the law of this Circuit, make

---

[3] The MCSO Defendants also assert that the evidence is sufficient to establish "reasonable suspicion" that Plaintiffs may have been suspects listed on the search warrant (Doc. 163 at 12-13), "[b]ut reasonable suspicion is not probable cause, and it alone cannot excuse a warrantless arrest[.]" *United States v. Struckman*, 603 F.3d 731, 743 (9th Cir. 2010).

- 9 -

clear that "the police may detain a building's occupants while officers execute a search warrant as long as the detention is reasonable." *Dawson v. City of Seattle*, 435 F.3d 1054, 1065 (9th Cir. 2006) (citing *Michigan v. Summers*, 452 U.S. 692, 704-05 (1981)). "Whatever previously may have been thought to bear on the reasonableness of a detention incidental to a search, the United States Supreme Court recently held that 'an officer's authority to detain incident to a search is *categorical*; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Id.* (quoting *Muehler v. Mena*, 544 U.S. 93, 125 S. Ct. 1465, 1470 (2005); emphasis in original). Nonetheless, a detention incident to a search must be conducted in a "reasonable manner." *Id.*

Plaintiffs argue, with some persuasive force, that their detention by MCSO personnel was unreasonable given, among other things, that they were involuntarily brought to the HMI worksite for the purpose of the search, that Julian was repeatedly denied permission to relieve himself for nearly an hour, that they remained handcuffed throughout the duration of the search and the tightness of the zip-tie on Julio's wrists caused pain, and that they were released only after answering questions about their identities and lawful presence in this country. Doc. 147 at 14-21. In determining whether a detention comports with the Fourth Amendment, "'the touchstone is reasonableness.'" *United States v. Guzman-Padilla*, 573 F.3d 865, 876 (9th Cir. 2009) (citations omitted). The reasonableness inquiry requires consideration of "the character of the official intrusion and its justification," *Summers*, 452 U.S. at 700, including legitimate law enforcement interests served by a detention: "'preventing flight in the event that incriminating evidence is found'; 'minimizing the risk of harm to the officers'; and facilitating 'the orderly completion of the search.'" *Muehler*, 544 U.S. at 98 (quoting *Summers*, 452 U.S. at 702-03); *see Sanchez v. Canales*, 574 F.3d 1169, 1173 (9th Cir. 2009). The Court concludes that whether Plaintiffs' detention was constitutionally reasonable is a question of fact best left for the jury to decide with the benefit of a full

record. *See Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) (reasonableness under the Fourth Amendment is ordinarily a fact question for the jury). Given this ruling, the jury also should determine, if necessary, whether the County is liable for any constitutional violation arising from Plaintiffs' detention. The Court will deny Plaintiffs' summary judgment motion with respect to the detention aspect of count one.[4]

**4.    The County's Liability for the Unconstitutional Stop and Arrest.**

As explained above, a municipality is liable under § 1983 where its policy, practice, or custom deprived the plaintiff of a constitutional right. *Monell*, 436 U.S. at 694. There are three ways to establish a policy, practice, or custom of a municipality: showing a practice or custom which constitutes the "standard operating procedure" of the municipality, showing that the decision-maker was, as a matter of state law, a "final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision," and showing that "an official with final policymaking authority either delegated that authority to, or ratified the decision of a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation omitted).

Plaintiffs have presented substantial evidence showing that they were stopped and arrested as a result of MCSO's well-established policies and standard operating procedures for employer immigration raids, as promulgated and ratified by Sheriff Arpaio. Doc. 148 ¶¶ 36, 38, 44, 57, 90, 103-04, 106-18, 125-27. Neither the County nor Sherriff Arpaio disputes that evidence. Docs. 161 at 9-11, 163 at 2 n.2. Because Plaintiffs have met their initial summary judgment burden, *see Celotex*, 477 U.S. at 323, and because Defendants have failed to demonstrate a genuine issue for trial, *see Anderson*, 477 U.S. at 248, the Court finds that the Sheriff's policies, practices, and customs were the "moving force" behind the violations of Plaintiffs' constitutional rights.

---

[4] Plaintiffs assert that the aggressive manner of the stop and the use of zip-ties constitute excessive force. Doc. 147 at 13, 20, 26-27. To the extent the complaint (Doc. 59) can be construed as asserting an excessive force claim, the Court will deny summary judgment on that claim. Plaintiffs have not, as a matter of undisputed fact or law, demonstrated that they were subjected to an unconstitutional use of force.

- 11 -

*Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002).

No municipal liability may attach under § 1983, the County asserts, because the Sheriff "is not a 'final policy maker' of Maricopa County as envisioned by *Monell*, but rather an independent 'policy maker' in an area over which Maricopa County has no legal authority or control[.]" Doc. 161 at 10-11. The Court does not agree.

It is well settled that "Sheriff Arpaio is a final policymaker for Maricopa County in the context of criminal law enforcement." *Lovejoy v. Arpaio*, No. CV 09-1912-PHX-NVW, 2010 WL 466010, at *12 (D. Ariz. Feb. 10, 2010); *see* Ariz. Const. art. 12, §§ 3-4; A.R.S. § 11-441. In that official capacity, his acts "surely represent an act of official government 'policy'" of Maricopa County. *Lovejoy*, 2010 WL 466010, at *13 (citations omitted). Indeed, there "may be no 'clearer case of county liability' than for the policies of a sheriff charged by law with responsibility for a county's [law enforcement]." *Flanders v. Maricopa County*, 54 P.3d 837, 847 (Ariz. Ct. App. 2002) (citation omitted).

Under *Monell*, therefore, Maricopa County is subject to § 1983 liability for the Sheriff's policies, customs, and practices which deprived Plaintiffs of their constitutional rights. *See id.* ("Because the judgment against the Sheriff was for constitutional violations committed in his official capacity, the County is liable as a matter of law."); *Martin v. Arpaio*, No. CV 06-2423-PHX-DGC (DKD), 2006 WL 3313950, at *2 (D. Ariz. Nov. 13, 2006) ("Regarding Arpaio in his official capacity, a suit against him officially is equivalent to a suit brought against . . . Maricopa County") (citations omitted); *see also Cortez v. County of L.A.*, 294 F.3d 1186, 1188-92 (9th Cir. 2001) (county subject to § 1983 liability where the sheriff acted as an official for the county); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986) (noting that while the sheriff's employment decisions would not result in municipal liability where employment policy was set by the county board, "decisions with respect to law enforcement practices, over which the [s]heriff *is* the official policymaker, *would* give rise to municipal liability") (emphasis in original). The Court will grant Plaintiffs' summary judgment

motion with respect the County's liability under § 1983 for the unconstitutional stop and arrest of Plaintiffs (part of count one).

### B. State Law Claims Asserted in Counts Three, Five, Six, and Seven.

In their motion, Plaintiffs sought a summary judgment finding that the County is vicariously liable, under the doctrine of respondeat superior, for violations of state law committed by MCSO officers. Doc. 147 at 29 & n.19. Plaintiffs concede in their reply brief that the County is not vicariously liable for such violations. Doc. 170 at 16; *see, e.g.*, *Fridena v. Maricopa County*, 504 P.2d 58, 61 (Ariz. Ct. App. 1972). The Court therefore will deny summary judgment in this respect. Given this ruling, the Court declines to decide whether MCSO officers violated any state law.

### III. The MCSO Defendants' Motion.

Based on Plaintiffs' non-opposition (Doc. 155 at 9), the Court will grant summary judgment on their claim for intentional infliction of emotional distress (count eight), the unreasonable search and seizure claims under the Fourth Amendment and Article 2, Section 8 of the Arizona Constitution (counts one and three) as to Defendants Jones and Rios, and the equal protection/racial profiling claims under the Fourteenth Amendment and Article 2, Section 13 of the Arizona Constitution (counts two and four) as to Defendants Jones, Sousa, Acritelli, and Rios. This leaves the following claims against the MCSO Defendants: (1) counts one and three against Sousa, Acritelli, and Arpaio, (2) counts two and four against Arpaio, (3) the false arrest and imprisonment claim asserted in count five against Montano and Arpaio, (4) and the assault and battery claims asserted in counts six and seven against Arpaio. *See* Doc. 59.

Summary judgment is warranted on counts one through four, Defendants argue, because there is no evidence showing that they personally participated in the alleged constitutional violations. Doc. 144 at 8-11. Sheriff Arpaio similarly argues that he is entitled to summary judgment on counts five, six, and seven because he was not directly involved in the alleged torts. *Id.* at 11-12.

**A.     Counts One through Four.**

Defendants argue that they cannot be held liable under § 1983 or state law because none of them "personally participated" in the traffic stop, handcuffing, or arrest of Plaintiffs. Doc. 144 at 9-11. Defendants present no legal authority or argument with respect to the state law issue. Summary judgment will therefore be denied on count three with respect to Sousa, Acritelli, and Arpaio, and on count four as to Arpaio. *See Celotex*, 477 U.S. at 323.

With respect to the § 1983 claims asserted in counts one and two, Defendants mistakenly equate "personal participation," as used in § 1983 jurisprudence, with actual physical participation in the underlying constitutional deprivation. Plaintiffs argue, correctly, that direct participation in the actual stop, cuffing, and arrest of Plaintiffs is not required to subject Defendants to liability on the § 1983 claims asserted in counts one and two. Doc. 155 at 14.

Lieutenant Sousa and Sergeant Acritelli allegedly had supervisory authority over the MCSO operation at HMI (Doc. 59 ¶¶ 11-12), and it is alleged that Sheriff Arpaio has the ultimate responsibility for and decision-making authority over all MCSO operations, including the MCSO immigration raid at HMI (*id.* ¶¶ 9, 41-44, 48). While liability may not be imposed under § 1983 against supervisory personnel for the actions of their subordinates under the theory of respondeat superior, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009), this Circuit has never required a plaintiff seeking to establish a claim for supervisory liability to prove that the supervisor was "physically present when the injury incurred." *Starr v. Baca*, 633 F.3d 1191, 1194 (9th Cir. 2011). "Supervisors can be held liable for the actions of their subordinates (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or

(4) for conduct that shows a 'reckless or callous indifference to the rights of others.'" *al-Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009) (citing *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991)).  In short, "'direct, personal participation is not necessary to establish liability for a constitutional violation.'" *Id.* (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004)).  Summary judgment will be denied on count one as to Sousa, Acritelli, and Arpaio, and on count two with respect to Arpaio.[5]

Defendants argue for the first time in their reply brief that Plaintiffs have presented no evidence demonstrating a triable issue as to supervisory liability under § 1983.  Doc. 160 at 4-11.  The Court will not address this argument.  "It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007) (citing *Lentini v. Cal. Ctr. For the Arts*, 370 F.3d 837 n.6 (9th Cir. 2004)).

Defendants further argue that counts two and four do not plead a claim for supervisory liability.  Doc. 160 at 2-4, 10.  Again, the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  Moreover, the complaint, read as a whole, provides fair notice to Defendants that supervisory liability was a basis for the § 1983 claims.  See Doc. 59 ¶¶ 10-13, 43-45, 52, 58.

**B.   Counts Five, Six, and Seven.**

Noting that he "did not actually and personally restrain, touch or even approach

---

[5] The Court recognizes that it may be difficult to reconcile the supervisory liability defined in *al-Kidd* with the Supreme Court's decision in *Iqbal* that a supervisor could not be found liable for mere "knowledge and acquiescence" in the unconstitutional conduct of his subordinate.  129 S. Ct. at 1949; *see Benjamin v. Haws*, No. CV 09-2046-VBF (DTB), 2010 WL 5124840, at *8 n.4 (C.D. Cal. May 28, 2010).  The decision in *al-Kidd*, however, appears to be the law of this circuit which the Court must follow.  Moreover, the claim in *Iqbal* was one for "purposeful" discrimination.  129 S. Ct. at 1948.  That state of mind is not required for all constitutional violations.  *See Starr*, 633 F.3d at 1196 (finding "nothing in *Iqbal* that indicates that the Supreme Court intended to overturn longstanding case law on deliberate indifference claims against supervisors").

the Plaintiffs" (Doc. 144 at 12), Sheriff Arpaio argues for summary judgment on the claims for false arrest and imprisonment, assault, and battery. The Sheriff has been sued in both his individual and personal capacities (Doc. 59 ¶ 9), but his argument does not distinguish between the two. Plaintiffs correctly note that, to the extent the Sheriff has been sued in his official capacity, he may be held vicariously liable on his official bond for torts committed by his deputies in the scope of their official duties. Doc. 155 at 23 n.15; *see* A.R.S. § 38-463; *Chaudoin v. Fuller*, 192 P.2d 243, 247 (Ariz. 1948); *Dogarin v. Connor*, 433 P.2d 653, 656-58 (Ariz. Ct. App. 1967) (finding sheriff vicariously liable on claims for false arrest and assault and battery against arresting deputy). The Court will deny summary judgment in this respect.

With respect to the Sheriff in his individual capacity, Plaintiffs argue that summary judgment is unwarranted because there is significant evidence of the Sheriff's participation in the conduct giving rise to their tort claims. Doc. 155 at 23. The Sheriff does not address this argument in his reply brief, nor does he otherwise present legal authority showing that he may not be held liable for authorizing or acquiescing in the alleged torts. *See* Doc. 59 ¶¶ 63, 65, 67. His request for summary judgment on counts five, six, and seven will be denied.

**IV. Conclusion.**

Plaintiffs' summary judgment motion will be granted in part with respect to the Fourth Amendment claim asserted in count one, that is, the County's liability under § 1983 for the unconstitutional stop and arrest of Plaintiffs. The motion will be denied in all other respects, including the detention aspect of count one. The summary judgment motion brought by the MCSO Defendants will be granted as to the claim for intentional infliction of emotional distress (count eight), the claims under the Fourth Amendment and Article 2, Section 8 of the Arizona Constitution (counts one and three) against Defendants Jones and Rios, and the claims under the Fourteenth Amendment and Article 2, Section 13 of the Arizona Constitution (counts two and four) against Defendants Jones,

Sousa, Acritelli, and Rios. Summary judgment otherwise will be denied.

**IT IS ORDERED:**

1. The motions for partial summary judgment (Docs. 144, 147) are **granted in part** and **denied in part** as set forth in this order.

2. Plaintiffs' motion to strike portion of reply brief or to consider sur-reply (Doc. 166) is **denied** as moot.

3. The Court will set a final pretrial conference by separate order.

Dated this 25th day of April, 2011.

_David G. Campbell_
David G. Campbell
United States District Judge